UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

EUGENE HAMILTON,                  )   No. ED CV 09-02213-PA (VBK)
                                  )
                Plaintiff,        )   ORDER RE DISMISSAL WITH LEAVE TO
                                  )   AMEND
        v.                        )
                                  )
S. WHITE, et al.,                 )
                                  )
                Defendants.       )
_____   )

    Pro se prisoner Eugene Hamilton (hereinafter referred to as "Plaintiff") filed a Civil Rights Complaint Pursuant to 42 U.S.C. §1983 on February 26, 2010, pursuant to the Court's Order re Leave to File Action Without Prepayment of Full Filing Fee.   Plaintiff's Complaint is 80 pages long, repetitive, rambling, and lists 19 causes of action against 74 Defendants.

    On March 3, 2010, the action was transferred from United States Magistrate Judge Carolyn Turchin to United States Magistrate Judge Victor B. Kenton for further proceedings.

**PLAINTIFF'S COMPLAINT**

    Plaintiff alleges violations of his First, Fifth and Fourteenth

Amendment equal protection rights not to be subjected to cruel and unusual punishment by "racially harbored propagation of false discipline and racially harbored deprivation of right to heard by [an] impartial hearing body." (Complaint at 26.)  Plaintiff alleges on February 13, 2006, while imprisoned at Ironwood State Prison and assigned to the vocational small engine class, he suffered from a debilitating, excruciatingly painful swollen left ankle injury and was in need of medical treatment.  Plaintiff alleges he was subjected to racially harbored disciplinary proceedings by Defendants that were reduced to a farce and sham as to alleged "failure to report" charges filed by Defendants Qualls, White, Patton. (Id. at 26.)  Plaintiff alleges that Defendants' "retaliatory harbored ratification" culminated in the imposition of atypical and significant hardships wherein Plaintiff sustained a "retaliatory harbored life threatening spinal injury at the hands of Defendant White." (Id. at 27.) Plaintiff alleges Defendants "retaliatorily transferred him and allowed him to deteriorate at a rapid pace." (Id. at 28.)

In Plaintiff's second cause of action, he alleges on February 25, 2006, while imprisoned at Ironwood State Prison and housed with prisoner Brown, K-02190, Plaintiff was advised that he was being moved to another housing unit, allegedly due to "racially balancing of the building". (Id. at 29.)  Plaintiff upon being made cognizant of the move to an upper tier cell approached the D-1 housing unit podium and advised an official that his upper tier cell should be canceled due to his medical condition and his inability to use the stairs predicated on his recently surgically repaired left knee as well as Plaintiff's medical chrono requiring lower tier bunk housing.  Upon Plaintiff's return to his cell, he was confronted by Defendant S. White, who in

open retaliation for Plaintiff's litigation of a February 3, 2006 CDC 602 Form grievance complaint against him, turned a retaliatory deaf ear to Plaintiff's medical concerns. (<u>Id</u>. at 29-30.) Plaintiff, while attempting to walk up the stairs to his cell and while carrying his property, fell down the stairs and injured his left knee, left elbow, left and right wrists, right knee, back, hip and thigh. Plaintiff filed a complaint against Defendant S. White alleging a "retaliatory harbored cell move culminating in life-threatening physical injury." (<u>Id</u>. at 30.) Plaintiff alleges that Defendant White's retaliatory harbored cell move culminated in Plaintiff's permanent impairment after being wheelchair-bound and suffering five different bulging discs and a cracked L5-S1 disc. (<u>Id</u>.)

In Plaintiff's third cause of action, he alleges that on three different occasions while imprisoned at Ironwood State Prison he was subjected to "racially retaliatory harbored discipline" despite being medically unable to attend his vocational assignment by Defendant T. Qualls. (<u>Id</u>. at 32.) Plaintiff alleges on December 14, 2007, he was retaliatory transferred to Corcoran State Prison and his property was impounded in Receiving and Release until January 18, 2008. Plaintiff alleges he was not allowed law library access until February 5, 2008. (<u>Id</u>. at 35.)

Plaintiff in his fourth cause of action alleges on March 24 and May 31, 2006, he was subjected to retaliatory harbored deliberate indifference to pain and suffering by Defendants wherein on March 24, 2006, Plaintiff suffered another episode wherein his severely painful spinal injury caused him to fall to the ground rendering him unable to ambulate due to excruciating pain. Plaintiff alleges he was precluded from seeking treatment by a doctor for his painful spinal injury by

1   Defendants who retaliatorily refused to allow him access to a doctor.

2   (Id. at 36.)

3       Plaintiff in his fifth cause of action alleges on March 6, 2006

4   while imprisoned at Ironwood State Prison, he was subjected to

5   retaliatory harbored deprivation of his First, Fifth, Eighth and

6   Fourteenth Amendment rights by being deprived of a much-needed medical

7   transfer for his spinal injury. (Id. at 38.)

8       In Plaintiff's sixth cause of action, he alleges on May 16, 2006

9   while imprisoned at Ironwood State Prison, he was subjected to

10  retaliation and deliberate indifference to pain and suffering by

11  Defendants.  Plaintiff alleges Defendants falsely charged him with

12  battery on Defendant Moening and Plaintiff's cell mate, and

13  retaliatorily transferred him to Calipatria State Prison, which

14  culminated in 22 months of administrative segregation/security housing

15  unit confinement coupled with Plaintiff being admitted as a patient of

16  the prison psychiatric program after Plaintiff attempted to take his

17  own life predicated upon such retaliatory harbored treatment. (Id. at

18  41.)

19      In Plaintiff's seventh cause of action, he alleges that he is

20  disabled under the Americans with Disabilities Act and on June 21,

21  2006, while in prison, he was subjected to retaliatory harbored

22  deprivation of his rights. (Id. at 48.)  Plaintiff alleges that due to

23  his spinal injury he needed medical accommodation of being housed in

24  a lower tier bunk.

25      In Plaintiff's eighth cause of action, he alleges that Defendants

26  have retaliated and discriminated against him in violation of the

27  Americans with Disabilities Act.  Plaintiff alleges that Defendants

28  have been deliberately indifferent to his medical needs and to his

pain and suffering. (Id. at 44-46.)

In Plaintiff's ninth cause of action, he alleges that while confined in administrative segregation his cell was unequipped for handicapped accessibility and therefore Plaintiff suffered more pain in his spine and lower back. (Id. at 47-48.)

In Plaintiff's tenth cause of action, he alleges that he was assaulted and battered by Defendants and was extracted from the unequipped non-handicapped-accessible administrative segregation cell and suffered deliberate medical/mental indifference to his pain and suffering. (Id. at 51.)

In Plaintiff's eleventh cause of action, he alleges on June 7, 2007, while imprisoned at Lancaster State Prison, he was subjected to retaliatorily harbored deliberate indifference to his pain and suffering and charged with battery on an inmate without a weapon. (Id. at 54-55.)

In Plaintiff's twelfth cause of action, he alleges that he was discriminated against and Defendants retaliatorily violated his rights and were deliberately indifferent to his medical needs. (Id. at 57.)

In Plaintiff's thirteenth cause of action, he alleges that he was subjected to retaliatory treatment by Defendants and suffered injuries. (Id. at 60-61.)

In Plaintiff's fourteenth cause of action, he alleges that Defendants retaliated against him and filed false disciplinary charges against him. (Id. at 62-63.)

In Plaintiff's fifteenth cause of action, he alleges that Defendants retaliated against him and were deliberately indifferent to his medical needs. (Id. at 64-65.)

In Plaintiff's sixteenth cause of action, he alleges Defendants

1   were deliberately indifferent to his medical needs and tried to, while

2   Plaintiff was hospitalized, incite racial violence against a white

3   prisoner named Mike Barnett. (Id. at 66.)

4       In Plaintiff's seventeenth cause of action, he alleges that

5   Defendants deprived him of food and pain medications. (Id. at 69-70.)

6       In Plaintiff's eighteenth cause of action, he alleges that while

7   hospitalized in the ADA room complete with medical appliances

8   Defendants removed a grab bar impinging on Plaintiff's mobility. (Id.

9   at 71.)

10      In Plaintiff's nineteenth cause of action, he alleges Defendants

11  retaliated against him and filed false disciplinary charges against

12  him denying Plaintiff an opportunity to be heard and proper notice of

13  the disciplinary infraction. (Id. at 73-74.)

14

15                  **DEFENDANTS NAMED IN PLAINTIFF'S COMPLAINT**

16      Plaintiff names the following as Defendants: S. White,

17  correctional lieutenant; M. Hawthorne, Correctional Captain; J. A.

18  Harris, Associate Warden; T. Qualls, Vocational Instructor; G.

19  Stanley, Correctional Educational Principal; J. Lewis, Correctional

20  Educational Vice Principal; A. Scott Baron, Appeals Coordinator; P.

21  Toara, Correctional Counselor II; R. Ansth, Correctional Captain; E.

22  Ruelas, Acting Correctional Counselor II; A. Nergenah, Classifications

23  Staff Representative; C. Perez, Correctional Registered Nurse; O.

24  Atiyota, Correctional Senior Registered Nurse II; S. Carnelius, Office

25  Technician; P. Collier, Correctional Sergeant; M. Guillin,

26  Correctional Lieutenant; T. Long, Correctional Lieutenant; M. Ortiz,

27  Correctional Lieutenant; Stuart Ryan, Chief Deputy Warden; Derek L.

28  Ollinson, Acting Warden; J. Tilton, Acting Secretary Department of

Corrections; J. Dovey, Director of Corrections; J. Tipton, Director - Secretary of Corrections; M. Cate, Director Department of Corrections; J. Stocker, Correctional Captain - Appeals Examiner; J. Batchelor - Correctional Captain - Appeals Examiner; S. Wright, Correctional Captain - Appeals Examiner; N. Grannis, Correctional Chief Inmate Appeals; R. Mira, Correctional Lieutenant; Mosality, Correctional Medical Technician Assistant; S. Mostafania, Correctional Registered Nurse; D. Palacios, Correctional Officer; C. Fortson, Correctional Captain; K. Moening, Correctional Officer; J. Morelli, Correctional Officer; K. Thomas, Jr., Correctional Sergeant; A. Khoury, Correctional Psychiatrist; R. Beltran, Correctional Lieutenant; V. Powers, Correctional Counselor; J. Gagaiagsan, Officer Services Supervisor I; C. Wooford, Associate Warden; D. K. Downs, Acting Chief Deputy Warden; A. Milson, Correctional Officer; K. Cruz, Classification Parole Representative; J. McGuinness, Acting Classification Parole Representative; C. Collins, Acting Classification Parole Representative; C. Nisingany, Acting Classification Parole Representative; J. P. Middleton, Correctional Lieutenant; R. J. Dottaniano, Correctional Captain; R. D. Middleton, Acting Associate Warden; A. W. Sylisa, Acting Correctional Captain; L. Parker, Correctional Captain; R. Knowles, Correctional Captain; R. Clemons, Correctional Lieutenant; V. S. Danna, Correctional Sergeant; Gephart, Correctional Sergeant; V. Hartley, Correctional Lieutenant; Jamerson, Correctional Officer; J. Frey, Correctional Officer; C. Chestnut, Correctional Officer; J. Carrell, Correctional Counselor Appeals Coordinator; R. Harris, Correctional Lieutenant; D. Fallon, Chief Deputy Warden; R. Nipper, Acting Chief Deputy Warden; K. Ericsson, Correctional Staff Services Analyst; R. Thomas,

1  Correctional Counselor II; T. Belavich, Ph.D., Correctional Health
2  Care Manager; V. O'Shaughnessy, Correctional Appeal Examiner; J.
3  Logan, Classification Staff Representative; D. Felix, Classification
4  Staff Representative; W. J. Sullivan, Acting Warden; F. B. Haws,
5  Warden; T. S. Arlitz, Acting Chief Deputy Warden; and E. Pull,
6  Correctional Lieutenant. (See Plaintiff's Complaint 1-5; attached pp.
7  8-25.)

8

9                          **STANDARD OF REVIEW**

10      Because Plaintiff is seeking to proceed in forma pauperis, the
11  Court shall review such a complaint "as soon as practicable after
12  docketing." Pursuant to 28 U.S.C. §1915(e)(2), the District Court is
13  required to dismiss a complaint if the Court finds that the complaint
14  (1) is legally frivolous or malicious, (2) fails to state a claim upon
15  which relief may be granted, or (3) seeks monetary relief from a
16  defendant immune from such relief. 28 U.S.C. §1915(e)(2)(B) (re: all
17  in forma pauperis complaints).

18      A complaint may also be dismissed for lack of subject matter
19  jurisdiction, pursuant to F.R.Civ.P. 12(b)(1). Neitzke v. Williams,
20  319, 327 n.6, 109 S.Ct. 1827 (1989) (unanimous decision)(patently
21  insubstantial complaint may be dismissed under Rule 12(b)(1) for lack
22  of subject matter jurisdiction. When considering a dismissal, a Court
23  must accept as true all allegations and material facts and must
24  construe those facts in a light most favorable to the plaintiff.
25  Resnick v. Hays, 213 F.3d 443, 447 (9th Cir. 2000). However, a "court
26  [is not] required to accept as true allegations that are merely
27  conclusory, unwarranted deductions of fact, or unreasonable
28  inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

Cir. 2001). Nor is a Court "bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 858 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. 1937, 1949, 172 L.Ed.2d 868 (2009)(citing <u>Twombly</u>, 550 U.S. at 556.) "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." (<u>Id</u>.) Although a complaint need not include "'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555. The Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" (<u>Id</u>. at 1950 [quoting Fed.R.Civ.P. 8(a)(2) (internal brackets omitted). "[A] well-pled complaint may proceed even if it appears that a recovery is very remote and unlikely." <u>Twombly</u>, 55 U.S. at 556, 127 S.Ct. 1955 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

In civil rights cases in which the Plaintiff appears <u>pro se</u>, the

pleadings must be construed liberally, so as to afford the plaintiff the benefit of any doubt as to the potential validity of the claims asserted. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). If, despite such liberal construction, the Court finds that the complaint should be dismissed for failure to state a claim, the Court has the discretion to dismiss the complaint with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). A pro se litigant should be given leave to amend, unless it is clear that the deficiencies of the complaint cannot be cured by amendment. Lopez, 203 F.3d at 1130-31; Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

## A.    Federal Rule Of Civil Procedure 8(a).

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007); Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). Rule 8 is designed to provide Defendants with fair notice of the claims against them and the grounds on which those claims rest. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). When a complaint fails to comply with Rule 8, it may be dismissed pursuant to F.R.Civ.P. 41(b). McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir.

1996)(complaint properly dismissed under Rule 41 for failure to comply
with Rule 8 in Court Order).

### DISCUSSION

**A.**   **Plaintiff's Complaint Does Not Comply with  Federal Rules of**
**Civil Procedure Rules 8(a) or 10(b).**

Rule 8(a) requires that a complaint contain a short and plain
statement of the claim showing that the pleader is entitled to relief.
Fed.R.Civ.P. 8(a)(2).  "The 'short and plain statement' must provide
the defendant with fair notice of what the plaintiff's claim is and
the grounds upon which it rests."  <u>Dura Pharmaceuticals, Inc. v.</u>
<u>Broudo</u>, 544 U.S. 336, 346, 125 S.Ct. 1627 (2005).  Here, Plaintiff has
failed to comply with Rule 8 as the Court cannot determine from the
complaint who is being sued, for what relief, and on what theory.

Rule 10(b) requires that "A party must state its claims or
defenses in numbered paragraphs, each limited as far as practical to
a single set of circumstance ...  If doing so would promote clarity,
each claim founded on a separate transaction or occurrence ... must be
stated in a separate count ..."  Fed.R.Civ.P. 10(b).  "Separate counts
will be required if necessary to enable the defendant to frame a
responsive pleading or to enable the court and the other parties to
understand the claims." <u>Bautista v. Los Angeles County</u>, 216 F.3d 837,
840 (9th Cir. 2000)(citations and quotations omitted).  "Courts have
required separate counts where multiple claims are asserted, where
they arise out of separate transactions or occurrences, and where
separate statements will facilitate a clear presentation."  <u>Id</u>.
"Experience teaches that, unless cases are pled clearly and precisely,
issues are not joined, discovery is not controlled, the trial court's

docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Id.

Here, Plaintiff has sued 74 Defendants in 19 causes of action, each of which raises multiple sub-claims.   In each cause of action, after setting forth his general litany of alleged state and federal violations, Plaintiff sets forth "supporting allegations," describing various often unrelated incidents without specifically tying these events to the legal claims he previously listed.   Plaintiff's "supporting allegations" frequently provide a laundry list of Defendants without specifically stating how each Defendant has caused each alleged federal or state violation.   See Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689 (1979)("A public official is liable under §1983 only 'if he causes a plaintiff to be subjected to a deprivation of his constitutional rights'").

Plaintiff lists various provisions of federal and California law as well as a California Department of Corrections and Rehabilitation ("CDCR") Operations Manual that Defendants allegedly have violated without further explanation of who violated these provisions or how they were violated.   Because of these significant pleading deficiencies, Plaintiff's Complaint is dismissed with leave to amend.

### B.   Section 1983 Pleading Requirements.

In order to state a claim under section 1983, a plaintiff must allege that:  (1) the defendants were acting under color of state law at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. See, Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir.), cert. denied,

522 U.S. 996, 118 S.Ct. 559 (1997); <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 624 (9th Cir. 1988); <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc), <u>cert. denied</u>, 478 U.S. 1020 (1986).   Liability under section 1983 is predicated upon an affirmative link or connection between the defendants' actions and the claimed deprivations.   <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 372-73, 96 S.Ct. 598 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." [citation]   Indeed, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." <u>Johnson v. Duffy</u>, 588 F.2d at 743-44.

**C.   <u>Plaintiff Is Granted Leave To Amend To State An Eighth Amendment Claim Concerning his Medical Care</u>.**

Plaintiff in his fourth, fifth, eleventh and seventeenth causes of action alleges Defendants were deliberately indifferent to his pain and medical needs.

"Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoner." <u>Toussaint v. McCarthy</u>, 801

F.2d 1080, 1111 (9th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1069 (1987); <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  Deliberate indifference occurs when prison officials deny, delay or intentionally interfere with medical treatment or in the way in which prison officials provide medical care.  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1062 (9th Cir. 1992), <u>overruled on other grounds</u> by <u>WMX Tech., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006); <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198 (9th Cir. 1989).  Deliberate indifference may also be shown by a prison official's attitude and conduct in response to a prisoner's serious medical needs.  <u>Helling v. McKinney</u>, 509 U.S. 25, 32-33 (1993); <u>Estelle</u>, 429 U.S. at 104-05.

To state a deliberate indifference claim, a prisoner plaintiff must allege both that the deprivation of medical care in question was objectively serious, and that the defendant official acted with a subjectively culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991).  The required showing of deliberate indifference is satisfied when it is established that "the official knew of and disregarded a substantial risk of serious harm to [the prisoner's] health or safety."  <u>Johnson</u>, 134 F.3d at 1398 (<u>citing</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)).

The courts have recognized that deliberate indifference to serious medical needs may be manifested in two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care."  <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1998)(<u>citing</u> <u>Estelle v. Gamble</u>, 429 U.S. at 105).  In either case, however, the indifference to the inmate's

medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation.  Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir.), cert. denied, 519 U.S. 1029 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).

Medical malpractice, even gross medical malpractice, does not amount to a violation of the Eighth Amendment.  Broughton v. Cutter Lab, 622 F.2d 458, 460 (9th Cir. 1980).  A dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under §1983.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shields v. Kunkel, 442 F.2d 409, 410 (9th Cir. 1971); Mayfield v. Craven, 433 F.2d 873 (9th Cir. 1970).

Plaintiff must set forth with particularity, specific facts demonstrating each individual Defendant's "deliberate indifference" to Plaintiff's medical condition.  Plaintiff should state what acts that each individual Defendant did or failed to do to with respect to Plaintiff's medical care.  Plaintiff may not simply claim that he has been denied adequate medical care and then list individual Defendants. In order to hold an individual Defendant liable, Plaintiff must name the individual Defendant, describe where that Defendant is employed and in what capacity, and explain how that Defendant acted under color of state law.  Plaintiff has not alleged facts showing that individual Defendants were deliberately indifferent to his serious medical needs, or that the course of treatment given to him was medically unacceptable under the circumstances.

//

//

1    **D.   <u>Plaintiff Has Failed to State a Violation of the Due Process</u>**
2         **<u>Clause</u>**.

3         Plaintiff alleges that he was retained in administrative
4    segregation and the SHU at Ironwood based on false disciplinary
5    reports.  The Due Process Clause protects against the deprivation of
6    liberty without due process of law.  <u>Wilkinson v. Austin</u>, 545 U.S.
7    209, 221, 125 S.Ct. 2384, 2393 (2005).   In order to invoke the
8    protection of the Due Process Clause, a plaintiff must first establish
9    the existence of a liberty interest for which the protection is
10   sought.  <u>Id</u>.  Liberty interests may arise from the Due Process Clause
11   itself or from state law.  <u>Id</u>.  The Due Process Clause itself does not
12   confer on inmates a liberty interest in avoiding "more adverse
13   conditions of confinement."  <u>Id</u>.  Under state law, the existence of a
14   liberty interest created by prison regulations is determined by
15   focusing on the nature of the deprivation.  <u>Sandin v. Connor</u>, 515 U.S.
16   472, 481-84, 115 S.Ct. 2293 (1995).   Liberty interests created by
17   state law are "generally limited to freedom from restraint which ...
18   imposes atypical and significant hardship on the inmate in relation to
19   the ordinary incidents of prison life."  <u>Id</u>. at 484; <u>Myron v. Terhune</u>,
20   476 F.3d 716, 718 (9th Cir. 2007).

21        Plaintiff has not alleged any facts supporting a claim that the
22   conditions in administrative segregation or the SHU constituted
23   atypical and significant hardship on him in relation to the ordinary
24   incidents of prison life. <u>Sandin</u>, 515 U.S. at 484.  Because Plaintiff
25   fails to establish the existence of a protected liberty interest, his
26   due process claim fails as a matter of law.
27   //
28   //

E.   **Equal Protection**.

Plaintiff claims his rights to equal protection were violated. The Equal Protection Clause requires that persons who are similarly situated be treated alike.   City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).   An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Oleck, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch, Ltd, v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).   A plaintiff must allege sufficient facts showing either intentional unlawful discrimination or allege facts "that are at least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Department, 565 F.3d 1205, 1212 (9th Cir. 2009).

Plaintiff has not alleged any facts demonstrating that he is being intentionally discriminated against on the basis of his membership in a protected class, or that he is being intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose.   Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

//

//

1    **F.    Plaintiff's Eighth Amendment Excessive Force Claim Is**
2         **Dismissed with Leave to Amend**.

3        Plaintiff alleges that he was "assaulted" and was subjected to
4   a retaliatory harbored racial assault and battery by Defendants K.
5   Moening, J. Morelli, A. Nelson and K. Thomas. (Complaint at 50.)

6        A plaintiff, however, "must allege facts, not simply conclusions,
7   that show that an individual was personally involved in the
8   deprivation of his civil rights." Baron v. Harrington, 152 F.3d 1193,
9   1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154, 119 S.Ct. 1058
10  (1999); see Iqbal, 129 S.Ct. at 1950 (stating that a complaint must
11  contain more than legal conclusions to withstand dismissal for failure
12  to state a claim).  With an Eighth Amendment excessive force claim,
13  the "core judicial inquiry" is "whether force is applied in a good
14  faith effort to maintain or restore discipline, or maliciously and
15  sadistically to cause harm." Wilkins v. Gaddy, ___ U.S. ___, 130
16  S.Ct. 1175, 1178 (2010)(per curiam)(quoting Hudson v. MacMillan, 503
17  U.S. 1, 7, 112 S.Ct. 995 (1992)).

18       Plaintiff has not alleged non-conclusory facts explaining what
19  each Defendant did or failed to do that amounts to the use of
20  excessive force in violation of the Eighth Amendment.

21

22       **G.   Plaintiff Has Failed to State a Claim for Retaliation**.

23       Plaintiff in conclusory language alleges he had been retaliated
24  against.  A claim may be stated under section 1983 for retaliation
25  against a prisoner's First Amendment right to file a prison grievance.
26  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  "Within the
27  prison context, a viable claim of First Amendment retaliation entails
28  five basic elements:  (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,[] and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). In Rhodes the Ninth Circuit also indicated that an allegation of harm could be sufficient if the inmate could not allege a chilling effect: "If [plaintiff] had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at 568 n.11.

A plaintiff asserting a retaliation claim must demonstrate a "but for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977). The prisoner must submit evidence, either direct or circumstantial to establish a link between the exercise of constitutional rights and the alleged retaliatory action. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. See Pratt, 65 F.3d at 808; Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

Here, Plaintiff's Complaint is filled with vague and general assertions of retaliation against him by Defendants. Plaintiff contends that every alleged act against him by Defendants, while providing or denying medical care, conducting a hearing, responding to his inmate appeals, or limiting his access to yard time was an act of

retaliation against him for the filing of prison grievances. Plaintiff's allegations of retaliation lack the factual specificity required to state plausible claims for relief against each of the Defendant. <u>Iqbal</u>, 129 S.Ct. at 1949-50. Moreover, it is implausible to assume that every named Defendant acted out of retaliation throughout every incident alleged in the Complaint. Plaintiff is granted leave to cure the deficiencies in an Amended Complaint.

**H.** **<u>Plaintiff Has Failed to State a Claim under the Americans with Disabilities Act or Rehabilitation Act</u>.**

Plaintiff in conclusory language alleges that Defendants have violated his Fourteenth Amendment right to equal protection clause and have violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"). (<u>See</u> Plaintiff's Complaint at fifth, sixth, seventh and eleventh causes of action.)

In order to state a claim under Title II of the ADA, Plaintiff must allege that (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of the prison's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the prison's services, programs or activities, or was otherwise discriminated against by the prison; and (4) such exclusion, denial or discrimination was by reason of his disability. 42 U.S.C. §12132; <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1265 (9th Cir. 2004).

To state a claim under §504 of the RA, a plaintiff must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit of a program or activity; (3) he was denied the benefit of a program or activity solely by reason of his disability;

and (4) the program or activity receives federal financial assistance. See 29 U.S.C. §794(a); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

Plaintiff's general reference to the rights of disabled prisoners under the ADA and the RA is not sufficient to meet his burden to plead the elements of a claim under either statute.

**I.   Supervisory Liability.**

Supervisory personnel generally are not liable under 42 U.S.C. §1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See Redman v. County of San Diego, 942 F.2d 1435, 1443-44 (9th Cir. 1991), cert. denied, 502 U.S. 1074 (1992). A supervisory official may be liable under §1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. See Id. at 1446-1447. To premise a supervisor's alleged liability on a policy promulgated by the supervisor, the plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). A "failure to train" theory can be the basis for a supervisor's liability under §1983 in only limited circumstances. See City of Canton, 489 U.S. at 387-90 (liability only where failure to train amounts to deliberate indifference).

J.    **Plaintiff Fails to State a Claim Based on the Processing of His Grievances**.

"An inmate has no due process rights regarding the proper handling of grievances." Wise v. Washington State Department of Corrections, 244 Fed. Appx. 106, 108 (9th Cir. 2007), cert. denied, 552 U.S. 1282, 128 S.Ct. 1733 (2008).[1] See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("Inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1998)("There is no legitimate claim of entitlement to a grievance procedure."). Thus, Plaintiff cannot state a claim based on the mishandling or denial of his grievances.

**CONCLUSION AND ORDER**

In an abundance of caution, Plaintiff will be afforded an opportunity to amend his Complaint to attempt to overcome the defects discussed above, and to allege a cognizable constitutional claim Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's Complaint is dismissed with leave to amend; and (2) Plaintiff is granted 30 days from the date of this memorandum and order within which to file a "First Amended Complaint." The First Amended Complaint must be complete within itself and shall not incorporate by reference any portion of the original Complaint. Plaintiff may not add new parties

//

//

---

[1]    The Court may cite unpublished Ninth Circuit decisions issued on or after January 1, 2007. United States Court of Appeals for the Ninth Circuit Rule 36-3(b); Fed.R.App.P. 32.1(a).

without leave of the Court.  Failure to comply with the requirements set forth in this Memorandum and Order may result in a recommendation that this action be dismissed with prejudice.


DATED: December 17, 2010                    /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE