UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

EUGENE HAMILTON,

            Plaintiff,

   v.

S. WHITE, et al.,

           Defendants.

No. ED CV 09-02213-PA (VBK)

ORDER RE DISMISSAL OF FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND

Pro se prisoner Eugene Hamilton (hereinafter referred to as "Plaintiff") filed a Civil Rights Complaint Pursuant to 42 U.S.C. §1983 on February 26, 2010, pursuant to the Court's Order re Leave to File Action Without Prepayment of Full Filing Fee. Plaintiff's original Complaint was 80 pages long, repetitive, rambling, and lists 19 causes of action against 74 Defendants.

On March 3, 2010, the action was transferred from United States Magistrate Judge Carolyn Turchin to United States Magistrate Judge Victor B. Kenton for further proceedings.

On December 17, 2010, the Court issued a Memorandum and Order dismissing Plaintiff's Complaint with leave to amend.

On January 10, 2011, Plaintiff filed a First Amended Complaint.

The First Amended Complaint is 109 pages long, repetitive, rambling and lists twelve causes of action against 60 Defendants.

Plaintiff alleges multiple claims in the First Amended Complaint that are largely unrelated, except that Plaintiff contends that every alleged act by Defendants was also an act of retaliation against him. Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members. The controlling principle appears in Fed.R.Civ.P. 18(a): "A party asserting a claim, counterclaim, cross claim, or third-party claim, may join as independent or alternate claims, as many as it has against an opposing party." Thus, multiple claims against a single party are fine, but Claim A against Defendant One should not be joined with unrelated Claim B against Defendant Two. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass a multiple claim multiple defendant suit produces, but also to ensure that prisoners pay the required filing fees for the Prison Litigation Reform Act ("PLRA") limits to three (3) the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. §1915(g); <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff's First Amended Complaint recites various encounters with prison officials, some of which are not related to others. Plaintiff will not be permitted to pursue unrelated claims in this action. In amending, Plaintiff should determine which related claims he wishes to pursue and re-allege those claims only.

//

//

//

**PLAINTIFF'S ALLEGATIONS CONTAINED IN THE FIRST AMENDED COMPLAINT**

Plaintiff alleges on November 30, 2005, while imprisoned at Ironwood State Prison, he sustained an injury to his previously broken left ankle. (First Amended Complaint ["FAC"] at 20.)  Plaintiff submitted a request seeking medical attention for his swollen left ankle along with a request for a lower tier bunk and soft shoe chrono. Id.  Plaintiff alleges on January 4, 2006, while imprisoned at Ironwood State Prison and assigned to the vocational small engine class, he was prohibited from attending class because he was not wearing state issued shoes.  Id.  Plaintiff alleges he was subjected to "racially harbored" disciplinary proceedings by Defendants that were reduced to a "farce and sham" as to alleged "failure to report" charges filed by Defendants Qualls, White, Patton. (Id. at 22.) Plaintiff alleges that Defendants' "retaliatory harbored ratification" culminated in the imposition of atypical and significant hardships. Plaintiff alleges he was assessed unfavorable conduct points for the two false disciplinary rule violation reports.  Plaintiff also alleges he sustained a life threatening spinal injury at the hands of Defendants Qualls and White. (Id. at 27.)  Plaintiff alleges Defendants retaliatorily transferred him to Calipatria State Prison (which is a more dangerous level IV high violence prison) and allowed him to deteriorate and deprived him of adequate medical care. (Id. at 28.)

In Plaintiff's first cause of action, he alleges on February 25, 2006, while imprisoned at Ironwood State Prison and housed with prisoner Brown, K-02190, Plaintiff was advised that he was being moved to another housing unit. (Id. at 30.)  Plaintiff upon being made cognizant of the move to an upper tier cell approached the D-1 housing

unit podium and advised an official that his upper tier cell should be canceled due to his medical condition and his inability to use the stairs predicated on his recently surgically repaired left knee as well as Plaintiff's medical chrono requiring lower tier bunk housing. Id. Upon Plaintiff's return to his cell, he was confronted by Defendant S. White, who in open retaliation for Plaintiff's litigation of a February 3, 2006 CDC 602 Form grievance complaint against him, turned a "retaliatory harbored" deaf ear to Plaintiff's medical concerns. (Id. at 30-31.) Plaintiff, while attempting to walk up the stairs to his cell and while carrying his property, fell down the stairs and injured his left knee, lumbar and cervical spine. Plaintiff sought medical attention because he could not ambulate. (Id. at 31.) Plaintiff alleges as a direct result of Defendant S. White he caused a "retaliatory harbored cell move culminating in lumbar, cervical spine, knee damage, which has resulted in permanent damage and wheelchair confinement." (Id. at 32.)

In Plaintiff's second cause of action, he alleges on December 14, 2007, he was retaliatory transferred to Corcoran State Prison and his property was impounded in Receiving and Release until January 18, 2008. Plaintiff alleges he was not allowed law library access until February 5, 2008. (Id. at 34.) Plaintiff also alleges in this same cause of action that on March 24 and May 31, 2006, he was subjected to retaliatory harbored deliberate indifference to pain and suffering by Defendants wherein Plaintiff suffered another episode wherein his severely painful spinal injury caused him to fall to the ground. (Id. at 37-38.) Plaintiff alleges he was precluded from seeking medical treatment for his painful spinal injury by Defendants who retaliatorily refused to allow him access to a doctor. (Id. at 38-44.)

4

1    In Plaintiff's third cause of action, he alleges on May 16, 2006
2  while imprisoned at Ironwood State Prison, he was summoned to a unit
3  classification committee meeting for an annual review. (Id. at 46.)
4  Plaintiff alleges his point score was increased based on two
5  disciplinary reports. (Id. at 46-48.)  Plaintiff alleges Defendants
6  falsely charged him with battery on an inmate with a weapon and
7  retaliatorily transferred him to Calipatria State Prison. (Id. at 49.)
8  Plaintiff was also charged with battery on Defendant Moening, which
9  culminated in 22 months of administrative segregation/security housing
10 unit confinement coupled with Plaintiff being admitted as a patient of
11 the prison psychiatric program after Plaintiff attempted to take his
12 own life predicated upon such retaliatory harbored treatment. (Id. at
13 51-52.)

14    In Plaintiff's fourth cause of action, he alleges that he is
15 disabled under the Americans with Disabilities Act and on June 21,
16 2006, while imprisoned at Ironwood, he was subjected to retaliatory
17 harbored deprivation of his rights. (Id. at 52-57.)  Plaintiff alleges
18 that due to his spinal injury he needed medical accommodation of being
19 housed in a lower tier-lower bunk but was housed on a lower tier-
20 upper bunk cell. (Id. at 53.)  Plaintiff was assigned a cellmate who
21 was a gang member and adamantly expressed to Plaintiff that he was
22 "not welcome". (Id. at 53.)  Plaintiff alleges he attempted to file
23 grievances against Defendants; however, the grievances were denied.
24 (Id. at 54-56.)

25    In Plaintiff's fifth cause of action, he alleges that Defendants
26 have retaliated and discriminated against him in violation of the
27 Americans with Disabilities Act and Section 504 of the Rehabilitation
28 Act.   Plaintiff alleges that Defendants have been deliberately

indifferent to his medical needs and to his pain and suffering. Plaintiff alleges he was transferred after his suicide attempt from Calipatria State Prison to California State Prison - Lancaster. (Id. at 58.)   Plaintiff alleges he was confined in an unequipped non-handicapped accessible administrative segregation cell and not provided with a proper medical examination and medical accommodations such as a walker. (Id. at 60.)

In Plaintiff's sixth cause of action, he alleges that while confined in administrative segregation his cell was unequipped for handicapped accessibility and therefore Plaintiff suffered more pain in his spine and lower back. (Id. at 67-82.)   Plaintiff alleges that he was assaulted and battered by Defendants Moening and Morelli and was extracted from the unequipped non-handicapped-accessible administrative segregation cell and suffered deliberate medical/mental indifference to his pain and suffering. (Id. at 67-69.)   Plaintiff alleges Defendants retaliated against him and filed false charges against him. (Id. at 69-82.)

In Plaintiff's seventh cause of action, he was subjected to retaliatorily harbored deliberate indifference to his pain and suffering and charged with battery on an inmate with a weapon. (Id. at 84.)   Plaintiff alleges false disciplinary charges were filed against him. (Id. at 84-89.)

In Plaintiff's eighth cause of action, he alleges that he was subjected to false disciplinary charges and to retaliatory treatment by Defendants and suffered injuries. (Id. at 89-94.)

In Plaintiff's ninth cause of action, he alleges that Defendants retaliated against him and filed false disciplinary charges against him and were deliberately indifferent to his medical needs. (Id. at

6

95-100.)

In Plaintiff's tenth cause of action, he alleges that on October 18, 2007, Defendants retaliated against him and were deliberately indifferent to his medical needs. Defendants retaliated against Plaintiff in depriving him of his evening meal and pain medication. Plaintiff on September 26, 2007 was deprived of ice and ice water by Defendant Chestnut. (<u>Id</u>. at 102.)

In Plaintiff's eleventh cause of action, he alleges Defendants were deliberately indifferent to his medical needs. Defendants transferred Plaintiff to a room unequipped with grab bars which caused injury to Plaintiff's spine and knees. (<u>Id</u>. at 104-106.)

In Plaintiff's twelfth cause of action, he alleges that on April 29, 2008, upon the conclusion of the retaliatory harbored 18 months in the Secured Housing Unit ("SHU") which Plaintiff alleges was utilized to cover up Defendants Moening, Morelli, Wilson, Thomas' use of excessive force, Plaintiff was transferred to Salinas Valley State Prison despite Dr. Fitter's recommendation that Plaintiff be transferred to a medical facility. (<u>Id</u>. at 107-08.)

## **DEFENDANTS NAMED IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff names the following as Defendants: S. White, Correctional Lieutenant; M. Hawthorne, Correctional Captain; J. A. Harris, Associate Warden; T. Qualls, Vocational Instructor; G. Stanley, Correctional Educational Principal; J. Lewis, Correctional Educational Vice Principal; A. Scott Baron, Appeals Coordinator; P. Toara, Correctional Counselor II; R. Ansth, Correctional Captain; E. Ruelas, Acting Correctional Counselor II; A. Nergenah, Classifications Staff Representative; C. Perez, Correctional Registered Nurse; O.

Atiyota, Correctional Senior Registered Nurse II; S. Carnelius, Office
Technician; P. Collier, Correctional Sergeant; M. Guillin,
Correctional Lieutenant; T. Long, Correctional Lieutenant; M. Ortiz,
Correctional Lieutenant; Stuart Ryan, Chief Deputy Warden; Derek L.
Ollinson, Acting Warden; J. Tilton, Acting Secretary Department of
Corrections; J. Dovey, Director of Corrections; J. Tipton, Director -
Secretary of Corrections; M. Cate, Director Department of Corrections;
J. Stocker, Correctional Captain - Appeals Examiner; J. Batchelor -
Correctional Captain - Appeals Examiner; S. Wright, Correctional
Captain - Appeals Examiner; N. Grannis, Correctional Chief Inmate
Appeals; R. Mira, Correctional Lieutenant; Mosality, Correctional
Medical Technician Assistant; S. Mostafania, Correctional Registered
Nurse; D. Palacios, Correctional Officer; C. Fortson, Correctional
Captain; K. Moening, Correctional Officer; J. Morelli, Correctional
Officer; K. Thomas, Jr., Correctional Sergeant; A. Khoury,
Correctional Psychiatrist; R. Beltran, Correctional Lieutenant; V.
Powers, Correctional Counselor; J. Gagaiagsan, Officer Services
Supervisor I; C. Wooford, Associate Warden; D. K. Downs, Acting Chief
Deputy Warden; A. Milson, Correctional Officer; K. Cruz,
Classification Parole Representative; J. McGuinness, Acting
Classification Parole Representative; C. Collins, Acting
Classification Parole Representative; C. Nisingany, Acting
Classification Parole Representative; J. P. Middleton, Correctional
Lieutenant; R. J. Dottaniano, Correctional Captain; R. D. Middleton,
Acting Associate Warden; A. W. Sylisa, Acting Correctional Captain; L.
Parker, Correctional Captain; R. Knowles, Correctional Captain; R.
Clemons, Correctional Lieutenant; V. S. Danna, Correctional Sergeant;
Gephart, Correctional Sergeant; V. Hartley, Correctional Lieutenant;

Jamerson, Correctional Officer; J. Frey, Correctional Officer; C. Chestnut, Correctional Officer; J. Carrell, Correctional Counselor Appeals Coordinator; R. Harris, Correctional Lieutenant; D. Fallon, Chief Deputy Warden; R. Nipper, Acting Chief Deputy Warden; K. Ericsson, Correctional Staff Services Analyst; R. Thomas, Correctional Counselor II; T. Belavich, Ph.D., Correctional Health Care Manager; V. O'Shaughnessy, Correctional Appeal Examiner; J. Logan, Classification Staff Representative; D. Felix, Classification Staff Representative; W. J. Sullivan, Acting Warden; F. B. Haws, Warden; T. S. Arlitz, Acting Chief Deputy Warden; and E. Pull, Correctional Lieutenant. (See FAC 1-4; 7-19.)

## STANDARD OF REVIEW

Because Plaintiff is seeking to proceed in forma pauperis, the Court shall review such a complaint "as soon as practicable after docketing."  Pursuant to 28 U.S.C. §1915(e)(2), the District Court is required to dismiss a complaint if the Court finds that the complaint (1) is legally frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §1915(e)(2)(B) (re: all in forma pauperis complaints).

A complaint may also be dismissed for lack of subject matter jurisdiction, pursuant to F.R.Civ.P. 12(b)(1).  Neitzke v. Williams, 319, 327 n.6, 109 S.Ct. 1827 (1989) (unanimous decision)(patently insubstantial complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  When considering a dismissal, a Court must accept as true all allegations and material facts and must construe those facts in a light most favorable to the plaintiff.

Resnick v. Hays, 213 F.3d 443, 447 (9ᵗʰ Cir. 2000). However, a "court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9ᵗʰ Cir. 2001). Nor is a Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 858 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. 1937, 1949, 172 L.Ed.2d 868 (2009)(citing Twombly, 550 U.S. at 556.) "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." (Id.) Although a complaint need not include "'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555. The Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" (Id. at 1950 [quoting Fed.R.Civ.P. 8(a)(2) (internal brackets omitted). "[A] well-

1  pled complaint may proceed even if it appears that a recovery is very
2  remote and unlikely." <u>Twombly</u>, 55 U.S. at 556, 127 S.Ct. 1955
3  (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

4      In civil rights cases in which the Plaintiff appears <u>pro se</u>, the
5  pleadings must be construed liberally, so as to afford the plaintiff
6  the benefit of any doubt as to the potential validity of the claims
7  asserted. <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 623
8  (9th Cir. 1988). If, despite such liberal construction, the Court
9  finds that the complaint should be dismissed for failure to state a
10  claim, the Court has the discretion to dismiss the complaint with or
11  without leave to amend. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th
12  Cir. 2000). A <u>pro se</u> litigant should be given leave to amend, unless
13  it is clear that the deficiencies of the complaint cannot be cured by
14  amendment. <u>Lopez</u>, 203 F.3d at 1130-31; <u>Cato v. United States</u>, 70 F.3d
15  1103, 1106 (9th Cir. 1995); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th
16  Cir. 1987).

17

18      **A.   <u>Federal Rule Of Civil Procedure 8(a)</u>.**

19      Federal Rule of Civil Procedure 8(a)(2) requires "a short and
20  plain statement of the claim showing that the pleader is entitled to
21  relief," in order to "give the defendant fair notice of what the ...
22  claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v.</u>
23  <u>Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007); <u>Erickson v.</u>
24  <u>Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007). "The plaintiff must
25  allege with at least some degree of particularity overt acts which
26  defendants engaged in that support the plaintiff's claim." <u>Jones v.</u>
27  <u>Community Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).
28  Rule 8 is designed to provide Defendants with fair notice of the

1 claims against them and the grounds on which those claims rest.  <u>See</u>
2 <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991).  When a complaint
3 fails to comply with Rule 8, it may be dismissed pursuant to
4 F.R.Civ.P. 41(b).  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1179 (9th Cir.
5 1996)(complaint properly dismissed under Rule 41 for failure to comply
6 with Rule 8 in Court Order).

8    **B.   <u>Federal Rule of Civil Procedure 10(b)</u>.**
9    Rule 10(b) requires that "A party must state its claims or
10 defenses in numbered paragraphs, each limited as far as practical to
11 a single set of circumstance ...  If doing so would promote clarity,
12 each claim founded on a separate transaction or occurrence ... must be
13 stated in a separate count ..." Fed.R.Civ.P. 10(b).  "Separate counts
14 will be required if necessary to enable the defendant to frame a
15 responsive pleading or to enable the court and the other parties to
16 understand the claims." <u>Bautista v. Los Angeles County</u>, 216 F.3d 837,
17 840 (9th Cir. 2000)(citations and quotations omitted).  "Courts have
18 required separate counts where multiple claims are asserted, where
19 they arise out of separate transactions or occurrences, and where
20 separate statements will facilitate a clear presentation."  <u>Id</u>.
21 "Experience teaches that, unless cases are pled clearly and precisely,
22 issues are not joined, discovery is not controlled, the trial court's
23 docket becomes unmanageable, the litigants suffer, and society loses
24 confidence in the court's ability to administer justice."  <u>Id</u>.
25    Here, Plaintiff has sued 60 Defendants in 12 causes of action,
26 each of which raises multiple sub-claims.  In each cause of action,
27 after setting forth his general litany of alleged state and federal
28 violations, Plaintiff sets forth "supporting allegations," describing

12

various often unrelated incidents without specifically tying these events to the legal claims he previously listed.   Plaintiff's "supporting allegations" frequently provide a laundry list of Defendants without specifically stating how each Defendant has caused each alleged federal or state violation.   <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 142, 99 S.Ct. 2689 (1979)("A public official is liable under §1983 only 'if he causes a plaintiff to be subjected to a deprivation of his constitutional rights'").

Plaintiff lists various provisions of federal and California law as well as a California Department of Corrections and Rehabilitation ("CDCR") Operations Manual that Defendants allegedly have violated without further explanation of who violated these provisions or how they were violated.   Because of these significant pleading deficiencies, Plaintiff's First Amended Complaint is dismissed with leave to amend.

<u>**DISCUSSION**</u>

**A.   <u>Section 1983 Pleading Requirements</u>.**

In order to state a claim under section 1983, a plaintiff must allege that: (1) the defendants were acting under color of state law at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>See</u>, <u>Johnson v. Knowles</u>, 113 F.3d 1114, 1117 (9th Cir.), <u>cert. denied</u>, 522 U.S. 996, 118 S.Ct. 559 (1997); <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 624 (9th Cir. 1988); <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc), <u>cert. denied</u>, 478 U.S. 1020 (1986).   Liability under section 1983 is predicated upon an

affirmative link or connection between the defendants' actions and the claimed deprivations.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 372-73, 96 S.Ct. 598 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." [citation]  Indeed, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." <u>Johnson v. Duffy</u>, 588 F.2d at 743-44.

**B.    <u>Plaintiff Is Granted Leave To Amend To State An Eighth Amendment Claim Concerning his Medical Care</u>.**

Plaintiff throughout his First Amended Complaint alleges Defendants violated his Eighth Amendment rights and were deliberately indifferent towards his medical care and treatment. "Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoner." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1069 (1987); <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285 (1976).  Deliberate indifference occurs when prison officials deny, delay or intentionally interfere with medical treatment or in the way in which prison officials provide

14

medical care.  McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992), overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); Hunt v. Dental Dept., 865 F.2d 198 (9th Cir. 1989).  Deliberate indifference may also be shown by a prison official's attitude and conduct in response to a prisoner's serious medical needs.  Helling v. McKinney, 509 U.S. 25, 32-33, 113 S.Ct. 2475 (1993); Estelle, 429 U.S. at 104-05.

      To state a deliberate indifference claim, a prisoner plaintiff must allege both that the deprivation of medical care in question was objectively serious, and that the defendant official acted with a subjectively culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991).  The required showing of deliberate indifference is satisfied when it is established that "the official knew of and disregarded a substantial risk of serious harm to [the prisoner's] health or safety."  Johnson, 134 F.3d at 1398 (citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)).

      The courts have recognized that deliberate indifference to serious medical needs may be manifested in two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1998)(citing Estelle v. Gamble, 429 U.S. at 105).  In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation.  Jackson v. McIntosh,

90 F.3d 330, 331 (9th Cir.), <u>cert. denied</u>, 519 U.S. 1029 (1996); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Franklin v. Oregon State Welfare Div.</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Medical malpractice, even gross medical malpractice, does not amount to a violation of the Eighth Amendment.  <u>Broughton v. Cutter Lab</u>, 622 F.2d 458, 460 (9th Cir. 1980).  A dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under §1983.  <u>See</u> <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Shields v. Kunkel</u>, 442 F.2d 409, 410 (9th Cir. 1971); <u>Mayfield v. Craven</u>, 433 F.2d 873 (9th Cir. 1970).

Plaintiff must set forth with particularity, specific facts demonstrating <u>each individual Defendant's</u> "deliberate indifference" to Plaintiff's medical condition.  Plaintiff should state what acts that each individual Defendant did or failed to do to with respect to Plaintiff's medical care.  Plaintiff may not simply claim that he has been denied adequate medical care and then list individual Defendants.  In order to hold an individual Defendant liable, Plaintiff must name the individual Defendant, describe where that Defendant is employed and in what capacity, and explain how that Defendant acted under color of state law.  Plaintiff has not alleged facts showing that individual Defendants were deliberately indifferent to his serious medical needs, or that the course of treatment given to him was medically unacceptable under the circumstances.

**C.**   **<u>Plaintiff Has Failed to State a Violation of the Due Process Clause</u>**.

Plaintiff alleges that he was retained in administrative segregation and the SHU at Ironwood based on false disciplinary

reports.  The Due Process Clause protects against the deprivation of liberty without due process of law.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  <u>Id</u>.  Liberty interests may arise from the Due Process Clause itself or from state law.  <u>Id</u>.  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement."  <u>Id</u>.  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  <u>Sandin v. Connor</u>, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995).  Liberty interests created by state law are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Id</u>. at 484; <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff has not alleged any facts supporting a claim that the conditions in administrative segregation or the SHU constituted atypical and significant hardship on him in relation to the ordinary incidents of prison life. <u>Sandin</u>, 515 U.S. at 484.  Because Plaintiff fails to establish the existence of a protected liberty interest, his due process claim fails as a matter of law.

**D.   Plaintiff's Eighth Amendment Excessive Force Claim Is Dismissed with Leave to Amend.**

Plaintiff alleges that he was "assaulted" and was subjected to a retaliatory harbored racial assault and battery by Defendants K. Moening, J. Morelli, A. Nelson and K. Thomas. (FAC at 67-82.)

A plaintiff, however, "must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Baron v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154, 119 S.Ct. 1058 (1999); see Iqbal, 129 S.Ct. at 1950 (stating that a complaint must contain more than legal conclusions to withstand dismissal for failure to state a claim). With an Eighth Amendment excessive force claim, the "core judicial inquiry" is "whether force is applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175, 1178 (2010)(per curiam)(quoting Hudson v. MacMillan, 503 U.S. 1, 7, 112 S.Ct. 995 (1992)).

Plaintiff is granted leave to allege non-conclusory facts explaining what each Defendant did or failed to do that amounts to the use of excessive force in violation of the Eighth Amendment.

**E.   Plaintiff Has Failed to State a Claim for Retaliation.**

Plaintiff in conclusory language alleges he had been retaliated against.  A claim may be stated under section 1983 for retaliation against a prisoner's First Amendment right to file a prison grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,[] and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  In

Rhodes the Ninth Circuit also indicated that an allegation of harm could be sufficient if the inmate could not allege a chilling effect: "If [plaintiff] had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at 568 n.11.

A plaintiff asserting a retaliation claim must demonstrate a "but for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977). The prisoner must submit evidence, either direct or circumstantial to establish a link between the exercise of constitutional rights and the alleged retaliatory action. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. See Pratt, 65 F.3d at 808; Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

Here, Plaintiff's First Amended Complaint is filled with vague and general assertions of retaliation against him by Defendants. Plaintiff contends that every alleged act against him by Defendants, while providing or denying medical care, conducting a hearing, responding to his inmate appeals, or limiting his access to yard time was an act of retaliation against him for the filing of prison grievances. Plaintiff's allegations of retaliation lack the factual specificity required to state plausible claims for relief against each of the Defendant. Iqbal, 129 S.Ct. at 1949-50. Moreover, it is implausible to assume that every named Defendant acted out of

1  retaliation throughout every incident alleged in the First Amended

2  Complaint. Plaintiff's retaliation claims are dismissed with leave to

3  amend.

4

5      **F.    Plaintiff Has Failed to State a Claim under the Americans**

6            **with Disabilities Act or Rehabilitation Act**.

7      Plaintiff in conclusory language alleges that Defendants have

8  violated the Americans with Disabilities Act ("ADA") and the

9  Rehabilitation Act of 1973 ("RA").

10     In order to state a claim under Title II of the ADA, Plaintiff

11  must allege that (1) he is an individual with a disability; (2) he is

12  otherwise qualified to participate in or receive the benefit of the

13  prison's services, programs or activities; (3) he was either excluded

14  from participation in or denied the benefits of the prison's services,

15  programs or activities, or was otherwise discriminated against by the

16  prison; and (4) such exclusion, denial or discrimination was by reason

17  of his disability. 42 U.S.C. §12132; McGary v. City of Portland, 386

18  F.3d 1259, 1265 (9th Cir. 2004).

19     To state a claim under §504 of the RA, a plaintiff must show (1)

20  he is an individual with a disability; (2) he is otherwise qualified

21  to receive the benefit of a program or activity; (3) he was denied the

22  benefit of a program or activity solely by reason of his disability;

23  and (4) the program or activity receives federal financial assistance.

24  See 29 U.S.C. §794(a); Duvall v. County of Kitsap, 260 F.3d 1124, 1135

25  (9th Cir. 2001).

26     Plaintiff's general reference to the rights of disabled prisoners

27  under the ADA and the RA is not sufficient to meet his burden to plead

28  the elements of a claim under either statute.

G.   **Supervisory Liability**.

Supervisory personnel generally are not liable under 42 U.S.C. §1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability.   See Redman v. County of San Diego, 942 F.2d 1435, 1443-44 (9th Cir. 1991), cert. denied, 502 U.S. 1074 (1992).   A supervisory official may be liable under §1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.   See Id. at 1446-1447.   To premise a supervisor's alleged liability on a policy promulgated by the supervisor, the plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation.   See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).   A "failure to train" theory can be the basis for a supervisor's liability under §1983 in only limited circumstances.   See City of Canton, 489 U.S. at 387-90 (liability only where failure to train amounts to deliberate indifference).

H.   **Plaintiff Fails to State a Claim Based on the Processing of His Grievances**.

"An inmate has no due process rights regarding the proper handling of grievances."   Wise v. Washington State Department of Corrections, 244 Fed. Appx. 106, 108 (9th Cir. 2007), cert. denied, 552

U.S. 1282, 128 S.Ct. 1733 (2008).[1]  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("Inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1998)("There is no legitimate claim of entitlement to a grievance procedure.").  Thus, Plaintiff cannot state a claim based on the mishandling or denial of his grievances.

## CONCLUSION AND ORDER

In an abundance of caution, Plaintiff will be afforded an opportunity to amend his First Amended Complaint to attempt to overcome the defects discussed above, and to allege a cognizable constitutional claim  Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's First Amended Complaint is dismissed with leave to amend; and (2) Plaintiff is granted 30 days from the date of this memorandum and order within which to file a "Second Amended Complaint."  The Second Amended Complaint must be complete within itself and shall not incorporate by reference any portion of the original or First Amended Complaint.  Plaintiff may not add new parties without leave of the Court.  Failure to comply with the requirements set forth in this Memorandum and Order may result in a recommendation that this action be dismissed with prejudice.


DATED:  March 9, 2011                _____/s/_____
                                     VICTOR B. KENTON
                                     UNITED STATES MAGISTRATE JUDGE

_____

[1]    The Court may cite unpublished Ninth Circuit decisions issued on or after January 1, 2007.  United States Court of Appeals for the Ninth Circuit Rule 36-3(b); Fed.R.App.P. 32.1(a).